IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:00-CV-127-H(4)

DOMESTIC FABRICS CORPORATION, )
)
       Plaintiff, )
)
)
v. ) **ORDER**
)
)
SEARS, ROEBUCK & CO., )
)
       Defendant. )

This matter is before the court on several motions by the defendant. The plaintiff has responded. On July 9, 2003, this court conducted a hearing on said matter. Thus, this matter is ripe for adjudication.

### STATEMENT OF THE CASE

In this patent infringement case, Sears, the defendant, is seeking: (1) a new trial pursuant to F.R.C.P. 59 or in the alternative Rule 60(b)(2), (3) based on newly discovered evidence; (2) to annul its prior stipulations withdrawing the affirmative defenses of unclean hands and invalidity of patent no. 5,636,533, ("'533") for a thermal/jersey fabric; (3) to annul its stipulation as to infringement; and, (4) leave to file a second set of affirmative defenses realleging unclean hands and patent invalidity.

To support its motions, Sears claims that the plaintiff's patent is invalid because: (1) it was on-sale or in public use more

COPIES SERVED by fax & mail

than one year prior to March 12, 1996, when the patent was filed, violating 35 U.S.C. § 102(b); (2) it was abandoned by its true inventor because it has been in use since 1985 and is therefore in the pubic domain, 35 U.S.C. § 102(c); (3) the incorrect inventor was placed on the application intentionally, violating 35 U.S.C. § 102(f); and, (4) plaintiff has unclean hands or committed a fraud on the USPTO by giving the incorrect inventor and not disclosing all prior art.

**STATEMENT OF THE FACTS**

A brief history of this litigation labyrinth is necessary. The parties to the underlying patent infringement action began their protracted journey on August 10, 2000. Over the course of the next three years, the case proceeded through discovery and filing of several dispositive motions. Briefly recounted, a <u>Markman</u> claim construction order was filed by this court on May 22, 2002, adopting the memorandum and recommendation filed by Magistrate Judge Louise Flanagan on March 4, 2002.[1] Following the court's order, the plaintiff filed a motion for summary judgment on June 28, 2002. On the same day, the defendant stipulated to

---

[1] The court adopted the following interpretation of the patent claims at issue:
> [T]he '533 patent is for a composite, double knit fabric having two layers, referred to as the "inner layer" and the "outer layer," which are terms of reference to distinguish the two layers of fabric. The term "inner layer" refers to the layer of the fabric with the air pockets. The term "outer layer" refers to the layer opposite the inner layer. The term "air pockets" as used in the '533 patent means voids.

2

liability based on the court's March 22, 2002, order and withdrew its affirmative defense of unclean hands. On October 29, 2002, the defendant filed another stipulation with the court withdrawing its affirmative defense of laches/estoppel as well as its affirmative defense alleging the invalidity of the '533 patent. The same day, the defendant filed a motion seeking entry of final judgment solely as to liability, pursuant to F.R.C.P. 54, in order to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(c) with the Federal Circuit on the issue of claim construction. It also asked the court to stay its determination of damages, including its decision on willfulness, as well as several other evidentiary motions tied to plaintiff's earlier motion for summary judgment.

While the court was considering this motion, on January 27, 2003, the defendant filed another motion seeking to reopen discovery in order to investigate statements made by one of plaintiff's recently fired employee who alleged that he was in fact the inventor of the '533 patent. On February 4, 2003, Magistrate Judge Flanagan entered a memorandum and recommendation that this court grant defendant's motion to enter final judgment and allowing the interlocutory appeal.

On February 18, 2003, the defendant filed an objection to the memorandum and recommendation based on its contention that it needed more time to conduct discovery in order to investigate the claims of plaintiff's former employee. By order filed March 11,

3

2003, this court adopted Magistrate Judge Flanagan's memorandum and recommendation to enter final judgment and also denied defendant's motion to reopen discovery, finding that the defendant's "new evidence" was highly questionable and unsupported by affidavit.[2] Defendant then filed a motion for reconsideration of this court's order denying its motion to reopen discovery. The court also denied said motion finding insufficient cause for reconsideration.

The basis for all of these claims is defendant's belief that Mr. Ronald Earnest Clayborne, a former employee of Domestic

---

[2] In support if its motion to reopen discovery, the defendant proffered three affidavits by defense counsel. One affidavit stated that counsel received a phone call from an unidentified individual stating that he had information concerning the "real" inventor of the '533 patent. Another affidavit stated that Sears was not made aware of Mr. Clayborne's importance during discovery. And the third affidavit stated the following:

> On January 3, 2003, I returned the phone call from Roland and reached him. Roland told me that he used to work for Domestic Fabrics, and that during his employment he invented the fabric that is the subject of the patent at issue in this lawsuit. Roland further said that, at some point in time, "Fred" (who I understood to be Mr. Fred Hunneke, president of Domestic Fabric) and another partner called Roland into his office and said that Domestic Fabric intended to file an application for a patent on the fabric that Roland invented. Roland said that he was told at the time that he would not be included as an inventor on the patent, but that Domestic Fabric would "take care of him." I believe Roland said that he had invented the fabric in the mid-1980s and that he had documents to support his claim. Roland said that, contrary to Mr. Hunneke's statements, Domestic Fabric did not take care of him but rather laid him off last year with no severance pay.

(Miltonberger Aff. ¶ 5.)

Defendant also took exception to this court's statement that "the issue of patent inventorship will not change the underlying inquiry before this court, i.e. whether Sears' conduct constituted infringement," arguing that this new evidence is critical to the question of infringement because it is the basis of several affirmative defenses. However, at the time of the this order, Sears had withdrawn all of its affirmative defenses and had also stipulated to infringement and liability based on the court's claim construction. Thus, the issues of patent invalidity and unclean hands were not properly before the court.

4

Fabrics, is the true inventor of the '533 fabric patent. Mr. Clayborne was terminated from Domestic Fabrics in October 2001 by Fred Hunneke, the current president of Domestic Fabrics, and two months later Mr. Clayborne made contact with counsel for Sears. Defendant contends that it was not apprised of Mr. Clayborne's existence during discovery and was not given documents which were highly relevant to its various defenses concerning invalidity. Defendant was made aware of Mr. Clayborne's importance in late December 2002 when someone contacted defense counsel over the phone stating that another person may have been responsible for inventing the '533 fabric patent in 1985.

Defense counsel followed up with this individual who put counsel in contact with Mr. Clayborne. Mr. Clayborne then told counsel that in 1996, when the application was being filed, Mr. Hunneke told him that he, i.e. Mr. Clayborne, would not be included on the patent application because he did not have a good technical background, rather only Mr. Hunneke and Mr. Uri Marker's names would be listed as inventors. Mr. Clayborne also claims that Mr. Hunneke promised he would be compensated for this in some form.

As evidence to support his assertion of inventorship, Mr. Clayborne provided Sears with a "Circular Knit Spec Sheet" which is in Mr. Clayborne's handwriting and is dated in 1985 which contains the specifications, i.e. the machine settings, for a fabric which, according to the defendant, is substantially similar to the fabric

5

at design in the '533 fabric patent. This document was not given to the defendant during discovery; however, related documents from 1984 were provided by the plaintiff in response to certain requests. Defendant also presented evidence of Dr. Trevor J. Little, an expert, who compared the '533 patent, with the specifications from the 1985 spec sheet, and he testified through affidavit that the specs from the 1985 spec sheet would create a fabric almost "identical" to the fabric described in the '533 patent. The spec sheet is unsigned, but Mr. Clayborne asserts that it is in his handwriting. Sears also presented evidence that the fabric set out in the 1985 spec sheet was finished into an actual fabric product in 1985, by introducing a "Fabric Finishing Specifications" sheet signed by B.N. Miller, a former employee of Oneita/Domestic. Mr. Miller also signed a declaration stating that the presence of a finishing spec sheet generally meant that between 25-60 yards of that fabric was created for distribution. Mr. Clayborne also states that he believes this jersey fabric was used to create clothing for Nautilus, although he has presented no evidence to support his oral assertions.

Defendant accuses the plaintiff of misconduct during the discovery process as well as during prosecution of the '533 patent in 1996: (1) defendant points to several statements made by Mr. Hunneke in his declaration concerning the length of the relationship between himself and Mr. Clayborne as "misleading;" (2)

6

Sears argues that many of plaintiff's answers indicated that Mr. Clayborne worked for Mr. Hunneke at Domestic Fabrics since 1995, thus misrepresenting the extensive length of their 30-year relationship;[3] (3) defendant also contends that certain interrogatory responses and document requests were incomplete or false in that Mr. Clayborne's name was never mentioned as a party who had knowledge concerning the prior art associated with the '533 patent, nor was he listed in response to questions concerning who discovered the alleged underlying infringement;[4] and, (4) the defendant argues that the plaintiff falsely indicated that the research and development of this fabric began in 1996, when according to Mr. Clayborne, it truly dates back to 1985. Sears also highlights that Mr. Clayborne's job description, which was written by Mr. Hunneke, describing Mr. Clayborne as a research and developer of new products, makes him a pertinent figure in this litigation; thus, underscoring his overall germaneness.

Plaintiff rebuts with the following: (1) Mr. Clayborne was

---

[3] Mr. Clayborne worked in three of Mr. Hunneke's previous fabric companies. From 1977 to 1989, Mr. Clayborne worked for Mr. Hunneke at Domestic Manufacturing Company (now called Oneita-Kinston Corporation). From 1989 to 1993, Mr. Clayborne worked for Mr. Hunneke at Down East Fabrics or Domestic Manufacturing Corporation. From 1995 until his termination in October 2002, Mr. Clayborne worked for Mr. Hunneke at Domestic Fabrics Corporation (plaintiff in this action).

[4] Specifically, Sears points to Domestic Fabrics' responses to its first set of interrogatories, numbers 6, 8, 10, 10(c), and (e), as misleading. These questions cover the timing and persons involved with the conception and development of the fabric embodied in the '533 patent. Sears also argues that plaintiff was untruthful in its responses to Sears' first request for production of documents, numbers 3, 4, 6, 7, 8, 9, 15, 16, and 18, which asked for documents relating to the '533 patent or any embodiment thereof.

7

primarily employed as a "machine man" whose duties encompassed filling out spec sheets and maintaining and setting the machinery which created the fabric; (2) he was fully aware of the allegations contain in this suit, yet only came forward upon his termination at Domestic Fabrics; (3) Mr. Clayborne admits that he filled out the 1985 spec sheet <u>after</u> he actually set the dials on the machine used to create the fabric, which according to the plaintiff, means he was not the creator of the information on the spec sheet, but rather copied the specifications from another source; (4) Mr. Clayborne's statements are not corroborated, in that B.N. Miller's finishing sheet is dated before the 1985 spec sheet which is not the common practice; (4) plaintiff never hid Mr. Clayborne's identity from Sears, in that he was featured in a brochure given to Sears during discovery, which Sears simply failed to follow up on; (6) Sears' characterizations of Mr. Hunneke's "misstatements" is based on it confusing the different legal entities with which Mr. Hunneke was involved; (7) Sears only deposed Mr. Hunneke, the inventor, for approximately 3 hours, and Mr. Marker, the co-inventor, for 20 minutes, and therefore was derelict in its discovery search; (8) one month prior to the scheduled depositions of Mr. Hunneke and Mr. Marker, plaintiff made all of its prior art and sales records available to Sears, yet Sears chose not to examine these documents; (9) Mr. Clayborne knew of this lawsuit when it was originally filed, yet made this accusation only after he was fired; (10) plaintiff provided affidavits of several

individuals who state that Mr. Clayborne never mentioned that he was the inventor of this patent and does not have the technical expertise to design this fabric; (11) Mr. Hunneke has been in the fabric design business for decades, is experienced in this product form, and is the named inventor on several valid fabric patents filed with the USPTO; and, (12) all of these alleged events happened in 1985, over ten years prior to the filed patent application and over 15 years after the complaint was filed in this case.

## **DISCUSSION**

Though not captioned as such, defendant's current motion is yet another attempt to reopen discovery. Only now, defendant has latched onto one statement in this court's prior order to do so. Defendant bases its contention that this is a motion for a new trial on this court's prior statement, that for the purposes of determining whether to reopen discovery, the <u>Markman</u> hearing was the substantive trial in this case. (March 11, 2003, Order at 2.) Though the court questions the appropriateness of this motion, having made that statement, the court will address the propriety of allowing the defendant a new trial. However, at the time the statement was made, i.e. in response to defendant's motion to reopen discovery, the only remaining issue before the court was summary judgment as to damages because the defendant had stipulated to liability based on Judge Flanagan's construction of the '533 patent claims.

## I. Standard of Review

To succeed on its current motion under Rule 59, which allows new trials or amendments of judgments, and Rule 60(b)(2), which allows relief from a judgment based on newly discovered evidence, the movant must show:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan v. U.S., 884 F.2d 767, 771 (4th Cir. 1989). Under Rule 60(b)(3), which allows relief from a judgment for fraud or misconduct, the movant must show:

> (1) the moving party must have a meritorious defense, (2) the moving party must prove misconduct by <u>clear and convincing</u> evidence, and (3) the misconduct prevented the moving party from fully presenting its case. After proof of these elements, the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case.

Shultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994) (emphasis added). The Fourth Circuit has defined "clear and convincing" evidence as "evidence . . . of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be

10

established, as well as evidence that proves the facts at issue to be highly probable." Jimenez v. Daimler Chrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001)(internal quotations and citations omitted).

The court finds that the evidence is newly discovered evidence, as Sears was not made aware of Mr. Clayborne's assertions of inventorship until after its stipulation to liability and the Markman hearing. Thus, remaining elements of Rule 59 and 60 collapse into questions concerning discovery and materiality of the new evidence. The court must determine whether Sears has presented clear and convincing evidence that: (1) its potential affirmative defenses are meritorious and likely to produce a finding of patent invalidity ; and, (2) it exercised due diligence in the discovery process or that Domestic engaged in discovery misconduct.

**A. Is this evidence likely to produce a new outcome by giving Sears a meritorious defense of patent invalidity?**

To settle this aspect of the Rule 59/60 standard, the court must engage in a substantive analysis of patent law. As an initial matter, because a registered patent is presumed valid under 35 U.S.C. § 282, defendant must prove all of its affirmative defenses by clear and convincing evidence. Also, the court has chosen to apply Federal Circuit law as opposed to Fourth Circuit law to this seemingly procedural inquiry because its resolution involves a substantive analysis of patent law.

11

### 1. Public Use Prohibition under 35 U.S.C. § 102(b)

Title 35 U.S.C. § 102(b) invalidates any patent which is in public use or on sale more than one year prior to the date of the patent application. This determination is a question of law. <u>Monon Corp. v. Stoughton Trailers Inc.</u>, 239 F.3d 1253, 1257 (Fed. Cir. 2001). "Public use" is defined as "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." <u>In re Smith</u>, 714 F.2d 1127, 1134 (Fed. Cir. 1983). The prior invention which is alleged to have been in use must also be the "embodiment" of the claimed invention at issue. <u>Juicy Whip, Inc. v. Orange Bang, Inc.</u>, 292 F.3d 728, 737 (Fed. Cir. 2002). However, experimental use negates a finding of public use. <u>Baxter Int'l, Inc. v. Cobe Labs, Inc.</u>, 88 F.3d 1054, 1059 (Fed. Cir. 1996).

To make a showing of prior sale, a party alleging invalidity must prove (1) that the product was the subject of a commercial sale or offer for sale and, (2) that the invention was ready for patenting. <u>Pfaff v. Wells Elecs, Inc.</u>, 525 U.S. 55, 67 (1998). Finally, to satisfy the burden of presenting clear and convincing evidence of prior public use or sale, a party presenting oral testimony must also present documentary corroborative evidence of the use or sale. "[U]ncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of [a] patent." <u>Lacks Ind., Inc. v. McKechnie Vehicle Components USA, Inc.</u>, 322 F.3d 1335, 1350 (Fed. Cir. 2003).

Sears presents the following evidence in support if its allegations of prior use: (1) Mr. Clayborne's statements; (2) the 1985 Spec Sheet; (3) the testimony of the expert Dr. Little; and, (4) the testimony of Mr. Miller along with the Finishing Sheet concerning the production of the fabric. The court does not find this evidence to be clear and convincing or sufficient to overcome the presumption of patent validity. Taking the evidence in the light most favorable to the defendant, i.e. that the fabric embodied in the '533 patent was previously designed and manufactured by the plaintiff in 1985, this is not evidence of public use; nor is it evidence of a prior sale. The fact that the 1985 fabric was "probably" finished into a sellable product, according to BN Miller, is insufficient to support a finding of a prior sale or commercial use. The only evidence presented by the defendant of a prior sale is Mr. Clayborne's declaration which states that he believes the fabric in the 1985 spec sheet was finished into fabric used to make Nautilus athletic wear. Once again, without corroboration the court is unwilling to invalidate the '533 patent.

More importantly, none of this evidence can be taken to support Mr. Clayborne's assertion of inventorship. First, the 1985 spec sheet was unsigned. Though Domestic Fabrics conceded during oral argument that the spec sheet was in fact in Mr. Clayborne's handwriting, plaintiff also highlighted that it was Mr. Clayborne's job to fill out such spec sheets. Thus, the fact that

13

he entered the numbers on the sheet does not lead to a determination that he came up with the process or patentable basis for the spec sheet.

Second, Mr. Clayborne's statements are not corroborated. He admitted that he wrote the specs on the 1985 sheet, after he had set the machine to create the fabric. It seems improbable that he conceived of this revolutionary new fabric without first documenting it prior to attempting to set the machine to create it. Furthermore, Mr. Miller's finishing sheet is dated before the 1985 spec sheet. According to Mr. Miller, it was customary for finishing sheets to be dated after the spec sheet, thus this discrepancy serves to undermine the credibility of Mr. Clayborne's assertions. Mr. Clayborne's assertion of inventorship is uncorroborated oral testimony, in that the 1985 spec sheet does not support his assertions that he invented the fabric and is dated after the finishing sheet. As uncorroborated oral testimony, it fails as a matter of law to support a finding of invalidity. See Lacks Ind., Inc., 322 F.3d at 1350.

Third, Mr. Clayborne made no mention of his inventing this fabric at any time prior to his termination in October 2001. The timing of Mr. Clayborne's statements are highly suspect and concern a matter that occurred in 1985. The court is persuaded that "uncorroborated oral testimony, particularly that of interested persons recalling long-past events, does not, of itself, provide clear and convincing evidence required to invalidate a patent on

14

[the grounds of prior public knowledge or use]." <u>Woodland Trust v. Flowertree Nursery</u>, 148 F.3d 1368, 1364-65 (Fed. Cir. 1998).

> 2. **Abandonment Under 35 U.S.C. § 102(c); Incorrect inventor Under 35 U.S.C. § 102(f); unclean hands or fraud on the USPTO**

Defendant's remaining affirmative defenses claim invalidity of the '533 patent because: (1) it was abandoned by its true inventor as it has been in use since 1985 and is therefore in the pubic domain, 35 U.S.C. § 102(c); (2) the incorrect inventor was placed on the application intentionally, violating 35 U.S.C. § 102(f); and, (3) plaintiff has unclean hands or committed a fraud on the USPTO by giving the incorrect inventor and not disclosing all prior art. Since all of these affirmative defenses are based on the propriety of Mr. Clayborne's assertion of inventorship, and are mere iterations of defendant's § 102(b) argument, they also fail for the reasons stated above.

Thus, defendant has failed to show that it has a meritorious defense which would support this court granting a new trial under Rule 59 or amending the entry of final judgment as to liability under Rule 60(b)(2) or (3).

> B. **Did Sears exercise due diligence in its discovery search? Did Domestic Fabrics engage in misconduct by failing to fully answer interrogatories and provide documents relevant to Sears' discovery requests?**

Defendant's claim also fails due to its inability to present clear and convincing evidence that it was diligent in its discovery search and its inability to show that Domestic Fabrics engaged in

15

discovery misconduct which prevented it from discovering the identity of Mr. Clayborne.

First, the court cannot find that Sears has presented clear and convincing evidence that it conducted a diligent discovery search. While the court does not require a defendant to engage in a fishing expedition, the court must require a certain degree of thoroughness. Here, the defendant conducted two fact depositions and one expert deposition. The two fact depositions were of the co-inventors, Mr. Hunneke, which lasted approximately three hours and of Mr. Marker, which lasted approximately 20 minutes. Defendant also forwent the opportunity to search plaintiff's sales records and documents relating to prior art. Thus, the court finds that Sears was not diligent in its discovery process.

Second, the court cannot find that Domestic's "incomplete" or "inaccurate" answers to interrogatories or discovery requests, in the context of the facts of this case, was misconduct which prevented Sears from discovering Mr. Clayborne's identity. The statements made by Mr. Hunneke's in his declaration concerning the length of the relationship between himself and Mr. Clayborne are technically accurate in that Mr. Hunneke response discussed the relationship of the two men at Domestic Fabrics. Though Mr. Hunneke could have volunteered that Mr. Clayborne worked for him while he was president of another company, that was not the direct question posed.

Concerning the "incomplete" interrogatory responses and

16

document requests, it is apparent that the plaintiff contests Mr. Clayborne's significance and asserts that he was not an inventor and therefore not relevant to the inquiries posed by Sears. Finally, the defendant argues that the plaintiff falsely indicated that the research and development of this fabric began in 1996, when according to Mr. Clayborne, it truly dates back to 1985. There is no question that the parties disagree on this issue, however, such disagreement is not a basis for a finding of fraud or misconduct.

## CONCLUSION

Thus, the court DENIES defendant's motion for a new trial. In so ordering, (1) the court also DENIES defendant's motion to withdraw its stipulation as to liability, (2) its stipulation withdrawing its affirmative defenses of invalidity and unclean hands and, (3) also DENIES defendant's motion to reassert the affirmative defenses of patent invalidity and unclean hands.

The court recognizes that these new issues are significant and therefore, also VACATES the portion of its order entered on March 11, 2003, which entered final judgment on the issue of liability/infringement. Rather the court will proceed to a determination of the scope of damages (including willfulness), as discussed in plaintiff's summary judgment motion and plaintiff's motion to strike. Thus, this matter is no longer stayed, and defendant may no longer appeal the liability/infringement judgment under 28 U.S.C. § 1292(c)(2) to the Federal Circuit Court. By so

17

doing, the court will conserve judicial resources and allow all pertinent issues to be presented together. The court will also allow the parties ten days from the filing of this order to file supplemental memoranda on the issue of damages.

This 15th day of July, 2003.

MALCOLM J. HOWARD
United States District Judge

At Greenville, NC
#4